**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

───────────────────────────────────────────────

**S&S SALES CORPORATION,**

   **Plaintiff,**

v.                     Case No. 06C0354

**MARVIN LUMBER & CEDAR COMPANY,**

   **Defendant.**

───────────────────────────────────────────────

**BUILDERS WORLD, INC.,**

   **Plaintiff,**

v.                     Case No. 06C0555

**MARVIN LUMBER & CEDAR COMPANY,**

   **Defendant.**

───────────────────────────────────────────────

## DECISION AND ORDER

Plaintiff Builders World, Inc. ("BWI"), a Wisconsin corporation, brings this diversity action alleging that defendant Marvin Lumber & Cedar, Inc. ("Marvin"), a Minnesota corporation, violated Wis. Stat. § 135.01 et seq., the Wisconsin Fair Dealership Law ("WFDL"), by constructively terminating it as a distributor of windows without good cause. Plaintiff now moves for a preliminary injunction.

### I. FACTS

Marvin manufactures windows and doors and sells them nationwide. In 1964, pursuant to an oral agreement, Marvin granted BWI a non-exclusive right to distribute its windows in eastern Wisconsin. In eastern Wisconsin, Marvin utilizes a two-step distribution

system. It sells windows to distributors, who sell to dealers, who in turn sell to retail customers. Marvin's distributors also assist dealers by providing training and performing warranty and service work. BWI distributes only Marvin windows but distributes a variety of products manufactured by other companies. In 2005, BWI grossed about $15.75 million, of which about $11.75 million resulted from sales of Marvin windows.

BWI is a cooperative and does not retain profits but rather distributes dividends to members. It has no employees and owns no real estate. It is managed by Shuter & Company ("Shuter") for a fee plus a percentage of profits. Shuter leases space to BWI and operates several vehicles for BWI. BWI spends about $100,000 annually advertising Marvin products, and Marvin and other Marvin distributors match this sum.

Since 1964, BWI and Marvin have modified their agreement on several occasions. Between 1964 and 1978, Marvin serviced dealers in BWI's territory, but in 1978, BWI began performing this function. In 1988, BWI became a full-service distributor and added several employees. In 1993, Marvin granted BWI distribution rights in the upper peninsula of Michigan. In 1991, Marvin permitted BWI to become a distributor of its Magnum line of windows and in 1994, of its Integrity line.

Marvin states that several large Marvin dealers have asked to purchase windows directly from Marvin rather than from a distributor. Marvin further states that it believes that it will lose the business of these dealers if it does not agree to sell "dealer direct" as it does in some other geographical areas. In May 2005, Marvin advised BWI of its intention to sell dealer-direct to these dealers. BWI responded that it believed that if Marvin did so, it would violate the WFDL. The parties discussed a resolution of the problem, including a possible buy-out by Marvin of BWI, but did not reach an agreement. Subsequently, Marvin notified

BWI that it would sell directly to some dealers, and BWI commenced the present action.

I will state additional facts in the course of the decision.

## II. PRELIMINARY INJUNCTION STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (citations omitted). Granting a preliminary injunction involves the "exercise of a very far-reaching power" and is "never to be indulged in except in a case clearly demanding it." Roland Mach. Co. v. Dresser Indus. Inc., 749 F.2d 380, 389 (7th Cir. 1984) (citations omitted).

A party seeking a preliminary injunction must demonstrate that it has some likelihood of success on the merits, that there is no adequate remedy at law, and that it will suffer irreparable harm if the injunction is not granted. AM Gen. Corp. v. DaimlerChrysler Corp., 311 F.3d 796, 803 (7th Cir. 2002); see also Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895 (7th Cir. 2001). If the party satisfies this burden, the court must consider "the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied," and consider the public interest. Ty, Inc., 237 F.3d at 895. The court's goal is to minimize the consequences of either denying a preliminary injunction to a party who will go on to win the case on the merits or of granting an injunction to a party who will go on to lose. Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd., 780 F.2d 589, 593-94 (7th Cir. 1986).

However, if the movant does not establish a likelihood of success on the merits or that it will suffer irreparable harm if the injunction is not granted, "then the district court's analysis ends and the preliminary injunction should not be issued." Adams v. City of Chi.,

3

135 F.3d 1150, 1154 (7th Cir. 1998) (citation omitted).

## III.  DISCUSSION

I conclude in the present case, as I did in the companion case, S&S Sales Corp. v. Marvin Lumber & Cedar Company, 435 F. Supp. 2d 879 (E.D. Wis. 2006), that I need not determine whether plaintiff is likely to succeed on the merits because, even assuming that it is, plaintiff does not to establish that it will suffer irreparable harm if I do not grant a preliminary injunction.  As previously stated, to obtain a preliminary injunction, an applicant must show that it has "no adequate remedy at law," and that it will suffer "irreparable harm" if the preliminary injunction is denied.  Roland Mach. Co., 749 F.2d at 386.  "The absence of an adequate remedy at law is a precondition to any form of equitable relief.  The requirement of irreparable harm is needed to take care of the case where although the ultimate relief that the plaintiff is seeking is equitable, implying that he has no adequate remedy at law, he can easily wait until the end of trial to get that relief."  Id.  Only if the plaintiff will suffer irreparable harm in the interim – that is, harm that cannot be prevented or fully rectified by the final judgment after trial – can he get a preliminary injunction.  Id.; see also Rio Grande Cmty Health Ctr. v. Rullen, 397 F.3d 56, 76 (1st Cir. 2005) (stating that irreparable injury in the preliminary injunction context means an injury that cannot be compensated either by a later-issued permanent injunction or a later-issued award of damages).

A plaintiff will suffer such harm if it (1) becomes insolvent or loses its business; (2) is unable to finance the lawsuit; (3) incurs damages that are very difficult to calculate; or (4) if the defendant becomes insolvent or loses its business.  Roland Mach. Co., 749 F.2d at 386.  Where a plaintiff will not incur losses so great as to threaten its solvency and

4

where its losses will be largely economic and thus measurable and compensable, the plaintiff does not establish irreparable harm. Praefke Auto Elec. & Battery Inc. v. Tecumseh Prods. Co., 255 F.3d 460, 463 (7th Cir. 2001). Further, harm that is conjectural is not considered irreparable for purposes of granting a preliminary injunction. See Public Serv. Co. of N.H. v. Town of W. Newbury, 835 F.2d 380, 383 (1st Cir.1987); see also Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir.1984).

Plaintiff appears to argue that it will suffer each form of irreparable harm listed above. Before I address plaintiff's arguments, however, I will briefly discuss § 135.065, which provides that "any violation of this chapter by the grantor is deemed an irreparable injury to the dealer for determining if a temporary injunction should be issued." In S&S Sales Corp. I concluded that § 135.065 creates a rebuttable presumption of irreparable harm. 435 F. Supp. 2d at 884. I will not repeat the reasoning underlying this conclusion as I discussed it in S&S Sales Corp. and in my decision denying S&S's motion for reconsideration. S & S Sales Corp. v. Marvin Lumber & Cedar Co., No 06C354, 2006 WL 2947315 (E.D. Wis. Oct. 16, 2006). As I construe § 135.065, the effect of the presumption is to transfer from the plaintiff to the defendant the burden of presenting evidence on the question of irreparable injury. If neither party presents evidence on the issue, the presumption requires a finding in favor of the dealer. If, however, the grantor presents evidence rebutting the presumption, the presumption falls out of the case, and the dealer must come forward with evidence. S&S Sales Corp, 435 F. Supp. 2d at 886. In the present case, Marvin presents evidence rebutting the presumption. Therefore, it falls out of the case.

I now turn to BWI's arguments in support of its claim that it will suffer irreparable

5

harm. First, BWI asserts that its business will be harmed if I do not issue a preliminary injunction. However, it does not claim that it will suffer such harm between now and the trial. On the contrary, it acknowledges that it "is not being threatened with outright termination," although it believes that Marvin's actions "will eventually drive BWI out of business." (Pl.'s Br. at 38.) The possibility that BWI might eventually go out of business is not a sufficient basis for granting a preliminary injunction. Rather, BWI must show that it will incur irreparable harm pending a trial on the merits. BWI neither argues nor presents evidence that it will incur such harm.[1]

Second, BWI suggests it "may not be able to finance a lawsuit." (Id.) However, plaintiff does not seriously argue this point, and its choice of words indicate that even in its view, the possibility that it will not be able to finance the present action is highly conjectural. Further, plaintiff presents no evidence in support of its conjecture.

In the same speculative vein, BWI suggests that Marvin may become insolvent, stating that "damages may be ephemeral because defendant is uncollectible." (Id.) Again,

---

[1] BWI and Marvin both make arguments about the likely long-term effect of Marvin's action on BWI. BWI argues that as a co-op, it does not retain profits and thus is not well-situated to sustain business losses. It also asserts that the industry is presently in a slow cycle, and that two of its dealers have indicated that they are likely to buy directly from Marvin. However, Marvin presents evidence indicating that BWI is well-positioned to cushion any long term harm. Marvin points out that as BWI has no employees, owns no equipment and merely leases its space and equipment, it is in no danger of losing an inveterate enterprise. Marvin also suggests that BWI could renegotiate its arrangement with Shuter. Marvin further asserts that BWI is in a position to compete with it because its prices are competitive with Marvin's and BWI has in the past demonstrated an ability to succeed in the face of competition as it did in 1987, when Marvin added S&S Sales Corporation as a distributor. Marvin further asserts that BWI has shown that it can succeed under a variety of conditions and that its annual sales have varied between $1.5 million and $10 million, and the number of its member-dealers between six and thirty. However, even if I assume that BWI has the better of this argument and that it will suffer serious long-term harm, BWI would not be entitled to a preliminary injunction.

however, BWI does not argue the point and presents no evidence in support of it.

Finally, BWI suggests that it may incur damages between now and the trial, which will be difficult to calculate, stating that "the nature of plaintiff's loss may make damages very difficult to calculate." (Id.) However, it again presents no evidence on the point. Moreover, the evidence indicates that the damages that BWI will incur between now and the trial are easily measurable. The principal injury that BWI is likely to incur between now and the trial is the loss of some sales that it would otherwise have made. The dollar amount of these sales will not be difficult to calculate. This is so because BWI has a long history of selling to the dealers to which Marvin wishes to sell directly and because Marvin keeps records of all of its dealer-direct sales. (Larson Decl. ¶ 2.) Thus, a yardstick exists for measuring whatever sales BWI might lose to Marvin. See Praefke, 255 F.3d at 463 (stating that because plaintiff's loses will be financial, they are "easily measured and readily compensated"). The present case is unlike those such as Sealy Mattress of Michigan, Inc. v. Sealy, Inc., 599 F. Supp. 1494, 1503 (N.D. Ill. 1984), where the plaintiff did not have a history of selling to retailers, and thus lacked a yardstick for measuring lost sales.

BWI also argues that it will lose goodwill, which loss will be difficult to calculate. It contends that a strain will develop between dealers and itself if dealers are permitted to purchase directly from Marvin and that its reputation will suffer. However, this argument seems highly conjectural. The evidence suggests that BWI offers a variety of services that Marvin does not. In addition, BWI's prices are competitive because it is a cooperative. Thus, some dealers will likely continue to buy windows from BWI. Even if some dealers switch to Marvin, it is hard to see how this would adversely affect their view of BWI. Thus, BWI does not make a persuasive showing that Marvin's action will cause it to lose goodwill

7

between now and trial.  See Public Serv. Co. of N.H., 835 F.2d at 383; Haussmann v. Chi. Bd. of Edu., 737 F. Supp. 56, 57 (N.D. Ill. 1990); see also P.R. Hosp. Supply, Inc. v. Boston Scientific Corp,, No. Civ. 05-1523 (HL), 2005 WL 1431882, at *4 (D.P.R. June 14, 2005) (all stating that harm that is conjectural is not considered irreparable harm for purposes of granting a temporary injunction).

Thus, BWI does not present evidence indicating that it will go out of business or become insolvent at any time in the near future.  It also does not show that it will be unable to finance the lawsuit, that Marvin will become insolvent or that it will suffer damages between now and the trial that will be difficult to calculate.  Therefore, it does not establish irreparable harm and, accordingly, is not entitled to a preliminary injunction.

### IV.  CONCLUSION

For the reasons stated,

**IT IS ORDERED** that plaintiff's motion for a preliminary injunction is **DENIED**.

Dated at Milwaukee, Wisconsin this 28 day of November, 2006.

/s_____
LYNN ADELMAN
District Judge